# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL VER HAGEN d/b/a DATA DESIGN,

               Plaintiff,

v.

BENETEK, INC.,

               Defendant.

Case No. 22-CV-1245-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff Michael Ver Hagen d/b/a Data Design ("Plaintiff") sues Defendant BeneTek, Inc. ("Defendant") for breach of contract and copyright infringement arising out of a software licensing agreement (the "Agreement") gone sour. ECF No. 11 at 4–5. Defendant counterclaims for breach of contract, professional negligence, and breach of the implied warranties of merchantability and fitness for a particular purpose. ECF No. 12 at 9–11.

Now before the Court are four motions in limine brought by Plaintiff, ECF Nos. 40, 41, 42, 43, and one motion in limine brought by Defendant, ECF No. 52.[1] Plaintiff also moves to restrict various filings

---

[1] On November 29, 2023, the Court heard oral argument on the motions in limine. ECF No. 53 at 2. The Court also ordered the filing of supplemental briefing on the motions in limine. *Id.* The Court has considered the parties' oral arguments and supplemental briefing in reaching its decision on the motions, although the Court notes that by, at times, merely copying and pasting portions of their original submissions into their supplemental submissions, the parties did not take full advantage of their opportunity to better develop and present their arguments to the Court.

associated with the motions in limine. ECF Nos. 60, 66, 83. For the reasons discussed herein, the Court will grant the motions to restrict, ECF Nos. 60, 66, 83, grant Plaintiff's first, second, and fourth motions in limine, ECF Nos. 40, 41, 43, grant Defendant's sole motion in limine, ECF No. 52, and deny Plaintiff's third motion in limine, ECF No. 42.

## 2. LAW & ANALYSIS

As a threshold matter, Defendant opposes all of Plaintiff's motions in limine on the ground that they impermissibly seek to dispose of entire claims—an endeavor better suited for dispositive motion practice. ECF Nos. 40 at 4–5, 41 at 4–5, 42 at 6–8, and 43 at 3–5. It is true that "[m]otions in limine are designed to resolve issues of admissibility; they're not appropriate vehicles to get a ruling on the merits of a claim or defense." *Burress v. Mr. G&G Trucking, LLC*, No. 19-cv-791-jdp, 2021 U.S. Dist. LEXIS 189961, at *1 (W.D. Wis. Sept. 30, 2021) (citing *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 145956, at *3 (W.D. Wis. Oct. 8, 2014)). Indeed, "[m]any of these disputes [now before the Court] should have been litigated in motions for summary judgment if the parties wanted them resolved before trial." *Id.* at *1–2.

Nevertheless, courts may disallow, even at the motion in limine stage, parties to proceed to trial on unsubstantiated or invalid claims that "would confuse the issues at trial and waste the jury's time." *Id.* at *2. "[I]t makes little sense to ignore the issue and proceed to trial without resolving it." *Marine Travelift, Inc. v. Marine Lift Sys.*, No. 10-C-1046, 2013 U.S. Dist. LEXIS 172055, at *3 (E.D. Wis. Dec. 3, 2013). Moreover, disposition of the motions will nevertheless affect what evidence will be received at trial, which is the purpose of a motion in limine. Accordingly, while Defendant's argument is well taken, and these issues should have been raised earlier

and via a different vehicle, the Court declines to dispose of Plaintiff's motions in limine on that ground.

### 2.1 Plaintiff's First Motion in Limine: To Bar Defendant's Counterclaim for Breach of Implied Warranties

Plaintiff first moves to bar Defendant's counterclaim for breach of the implied warranties of merchantability and fitness for a particular purpose on the ground that the Agreement is predominantly one for services, rather than goods, such that the Uniform Commercial Code ("UCC") and its attendant implied warranties do not apply. *See generally* ECF No. 40.[2] The Court will grant this motion.

Wis. Stat. § 402.314 provides that, unless excluded, there is an implied "warranty that the *goods* shall be merchantable . . . if the seller is a merchant with respect to *goods* of that kind." (emphases added). Similarly, Wis. Stat. § 402.315 provides that, unless modified or excluded, there is an "implied warranty that the *goods* shall be fit for such [particular] purpose." (emphasis added). When a contract at issue is "predominantly for services instead of goods," "the warranties provided by the Uniform Commercial Code do not apply." *RingTrue, Inc. v. McWethy*, No. 99-0351, 2000 Wisc. App. LEXIS 326, at *1 (Wis. Ct. App. Apr. 18, 2000) (non-precedential opinion).

"Interpreting . . . whether [a contract] is primarily one for goods or primarily one for services—presents a question of law . . . ." *Linden v.*

---

[2]In a supplement, Defendant proffers that even if the Court declines to recognize "warranties implied in law," the Court may nevertheless recognize "a warranty implied in fact" by virtue of the fact that Plaintiff contracted to "design the software to meet [Defendant's] 'requirements'" and made further "verbal guarantees . . . that he would design the software to automate [Defendant's] existing manual processes." ECF No. 76 at 2–3. The Court finds the argument to be overall underdeveloped and will accordingly decline to consider it further.

*Cascade Stone Co.*, 699 N.W.2d 189, ¶ 5 (Wis. 2005) (citing *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 688 N.W.2d 462 (Wis. 2004)). "In order to determine whether a given contract between two parties is one for services or products, a court is to apply the 'predominant purpose' test by considering objective and subjective factors such as 'the amount charged for services and the amount charged for materials, whether the purpose or "thrust" of the contract was for goods or for services[,] and the language used in the contract to describe the project.'" *Trinity Lutheran Church v. Doreschner Excavating, Inc.*, 710 N.W.2d 680, ¶ 22 (Wis. Ct. App. 2006) (quoting *Linden*, 699 N.W.2d, ¶ 20). "The predominant purpose test is a 'totality of the circumstances' test." *Id.* (quoting *Linden*, 699 N.W.2d, ¶¶ 22, 32).

The Agreement in this case provides that it "is for the creation, delivery, and support of the software [(the "Software")] that [Plaintiff] will provide to [Defendant]." ECF No. 40-1 at 1. It expressly includes "related support services . . . provided by [Plaintiff]." *Id.* It provides that "[Plaintiff] will provide [the Software] to [Defendant]," "assist with the work of the technical staff to perform the initial installation" of the Software, "train[] . . . th[e] initial operators" of the Software, and "provide technical documentation and guidance to" Defendant's IT staff. *Id.* at 2–3.

The Court is satisfied that the Agreement is predominantly one for provision of services such that the implied warranties of merchantability and fitness for a particular purpose do not apply. In *Data Processing Services v. L.H. Smith Oil Corporation,* the Indiana Court of Appeals addressed the question of whether a contract for development and delivery of a computer program was one for sale and purchase of goods or one for performance of services. 492 N.E.2d 314 (Ind. Ct. App. 1986). The court there concluded that the transaction predominantly involved services:

> [The plaintiff] was retained to design, develop and implement
> an electronic data processing system to meet [the defendant]'s
> specific needs . . . . The very terminology used by the . . .
> parties . . . show services, not goods were that for which [the
> defendant] contracted. [The plaintiff] was *to act* with specific
> regard to [the defendant]'s need . . . . Although the end result
> was to be preserved by means of some physical manifestation
> such as . . . floppy or hard disks . . . it was [the plaintiff]'s
> knowledge, skill, and ability for which [the defendant]
> bargained.

*Id.* at 318–19; *see also Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sols. LLC*,
893 F.3d 454, 459 (7th Cir. 2018) ("[W]here a contract calls for the design of
software to meet the buyer's specific needs, Indiana treats it as a services
contract.").[3] Importantly, "[t]he sale of computer hardware or generally-
available standardized software was not [t]here involved." *Data Processing*,
492 N.E.2d at 319 (citing *RRX Indus. v. LabCon, Inc.*, 772 F.2d 543, 546 (9th
Cir. 1985)).

The Wisconsin Court of Appeals relied on *Data Processing* in *Micro-
Managers v. Gregory*, 434 N.W.2d 97, 100 (Wis. Ct. App. 1988) ("[W]e
conclude that *Data Processing v. L.H. Smith Oil Corp.*, 492 N.E.2d 314 (Ind.
App.) . . . is on point and . . . compelling."). There, the court wrote that "[t]he
contract speaks in terms of 'man-days,' 'development,' 'time,' 'design,' etc.
These words connote the rendition of services and not a sales transaction."
*Id.* at 100. The Agreement in the instant case uses similar words, and it
references payment installments based on "[o]ne-hundred hours of
programming time at $150 per hour, to modify, enhance, and augment

---

[3]Defendant explicitly concedes that several of these considerations are
reflected in the instant case. ECF No. 40 at 9 ("[Defendant] contracted with
[Plaintiff] for the . . . [S]oftware because it did not have the software or capabilities
to develop it on its own. For this reason, [Plaintiff] was specifically tasked with
requirements the [S]oftware needed to fulfill [Defendant's] needs.").

[Plaintiff's] software assets." ECF No. 40-1 at 5. This supports the conclusion that the contract is primarily one for provision of services.

Similarly, in *RingTrue,* the court concluded that the contract "to design a computer software program" was "predominantly for services instead of goods" where:

> [t]he parties' transaction focused on [the defendant]'s skill and competence rather than the condition of the product, which had not yet been created. Although the contract contemplated that [the defendant]'s services would achieve a promised result, we are satisfied that its primary purpose was the rendition of services. Its predominant purpose was not to sell a product, but to design and develop the software.

2000 Wisc. App. LEXIS 326, at *1, *11.

All the same can be said here. The Court is not persuaded by Defendant's arguments to the contrary. Defendant cites to *Newcourt Financial USA, Inc. v. FT Mortgage Cos.,* 161 F. Supp. 2d 894, 897 (N.D. Ill. 2001), claiming that the court there "f[ound] custom software to be a good," ECF No. 40 at 6, but this borders on obfuscation. The court there determined that the contract at issue was a mixed one for provision of both goods and services, but it explicitly wrote that it "c[ould not] determine[] whether the primary purpose of the agreement was for goods or services" and that "material questions of fact remain[ed] as to whether the agreement" was predominantly one for provision of goods such that the UCC's implied warranties applied. *Newcourt,* 161 F. Supp. 2d at 898. Nowhere in that case—including at the page that Defendant cites—does the court hold, or even express in dicta, that a contract for provision of custom software is primarily one for goods such that it falls within the ambit of the UCC.

Defendant also cites to *Micro Data Base Systems v. Dharma Systems,* 148 F.3d 649, 654 (7th Cir. 1998) in support of the assertion that "the UCC

applies to disputes arising from the sale of custom software." ECF No. 40 at 6. But the issue is that it is not at all clear that this case involves a sale. ECF No. 40 at 7 (Defendant contention that the Agreement's provision for "installation, technical support, maintenance, and training are incidental services related to the *sale* of the . . . software") (emphasis added); ECF No. 62 at 5 (Defendant contention that it "bought the software itself"). The words "sale," "purchase," "buyer," "seller"—or any other words that would indicate a transfer of title/ownership—never appear in the Agreement. *See Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 523 (7th Cir. 2003) ("Under the [UCC], . . . it is well established that a sale occurs only where there is a passing of title to a buyer . . . . In common speech, similarly, a sale is typically understood to require the transfer of title.") (citing UCC §§ 2-106[1] and 2-103[1][a]) and Webster's Ninth New Collegiate Dictionary 1037 (1987)).

The Agreement's language more so suggests conveyance to Defendant of a right to use the Software, which ultimately remains in Plaintiff's control to modify as he sees fit. ECF No. 43-1 at 1 (describing the Software as being "provided by [Plaintiff] to be operated by [Defendant]"); *id.* at 3 (authorizing Plaintiff to "make changes [to the Software as] it deems appropriate" and to "at any time, deliver and cause to be installed, an updated version of [the Software] as [Plaintiff] determines is appropriate or necessary"). Indeed, "license agreements, rather than sales, have become the predominate form of the transfer of rights to use copyrighted software material . . . ." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1155 (9th Cir. 2011). Defendant characterizes the transaction as a sale but fails to explain why it should be considered as such. As a result, many of the cases on which Defendant relies appear to be distinguishable. *See* ECF No. 40 at 6 (citing

*Surplus.com, Inc. v. Oracle Corporation*, No 10 CV 03510, 2010 U.S. Dist. LEXIS 136254, at *10, 15 (N.D. Ill. Dec. 23, 2010) (involving the "purchase[] [of] a software program" rather than merely involving a licensing agreement for the use thereof)).

For all these reasons, the Court concludes that the Agreement is predominantly one for services such that the implied warranties of merchantability and fitness for a particular purpose do not apply. The Court accordingly grants Plaintiff's first motion in limine and dismisses with prejudice Defendant's counterclaims for breach of the implied warranties of merchantability and fitness for a particular purpose.

### 2.2 Plaintiff's Second Motion in Limine: To Bar Defendant's Counterclaim for Professional Negligence

Plaintiff next moves to bar Defendant's counterclaim for professional negligence on the ground that "a claim for professional negligence against a computer consultant [does not] exist[] as a matter of law." ECF No. 41 at 1. The Court agrees. Accordingly, the Court will grant Plaintiff's second motion in limine and will dismiss with prejudice Defendant's counterclaim for professional negligence.

The Court looks primarily to *Racine County v. Oracular Milwaukee, Inc.*, 767 N.W.2d 280 (Wis. Ct. App. 2009), *aff'd on alternate grounds by* 781 N.W.2d 88 (Wis. 2010),[4] on this issue. The Wisconsin Court of Appeals there began by acknowledging that "the need to label a person a professional is part and parcel of a 'professional malpractice' action." *Oracular*, 767 N.W.2d, ¶ 24. The court expressed doubt, however, that such a measure

---

[4]"We do not reach the question of whether a computer consultant constitutes a 'professional' for purposes of this case . . . ." *Racine County v. Oracular Milwaukee, Inc.*, 781 N.W.2d 88, ¶ 5 n.2 (Wis. 2010).

Case 2:22-cv-01245-JPS   Filed 02/01/24   Page 8 of 28   Document 84

was appropriate in the context of an action for breach of contract. "[T]he case at bar," the court stressed, "is not a malpractice action; it is a contract action." *Id.* "The [plaintiff] wants the benefit of its bargain; it does not seek to be 'made whole.'" *Id.* "[B]y cloaking [the defendant's] computer consultants with the professional tag, [the trial court] add[ed] to the [plaintiff's] burden in pursuing the benefit of the bargain. We wonder if the professional moniker is a proper component of a breach of contract action." *Id.*

"We have found convincing explanations," the court continued, "from well-respected treatises and persuasive on-point authority from other jurisdictions that convince us that computer consultants are not professionals as that term is used in the tort of professional negligence." *Id.* The court was persuaded by, inter alia, Nimmer's treatise on computer technology and the law, which provides that "computer programming and consultation lack the indicia associated with professional status for purposes of imposing higher standards of reasonable care." *Id.*, ¶ 27 (quoting RAYMOND T. NIMMER, THE LAW OF COMPUTER TECHNOLOGY § 9.30 at 9-11 (3d ed., Thomson/West 2008) ("NIMMER")). For example, "[u]nlike traditional professions, while practitioner associations exist, there is no substantial self-regulation or standardization of training within the programming or consulting professions." *Id.* (quoting NIMMER). Ultimately, the court expressly concluded that "computer consultants are not professionals" for purposes of the tort of professional negligence. *Id.*, ¶ 33; *see id.*, ¶ 29 ("Other jurisdictions have reached the same result.") (citing *Columbus McKinnon Corp. v. China Semiconductor Co., Ltd.*, 867 F. Supp. 1173 (W.D.N.Y 1994) ("There is no basis in law for extending the doctrine of professional malpractice to cover independent computer consultants.")).

Case 2:22-cv-01245-JPS   Filed 02/01/24   Page 9 of 28   Document 84

Defendant cites to *Micro-Managers* in support of its assertion that "Wisconsin law holds that software developers who program customizable software for the benefit of a customer are subject to claims for professional negligence." ECF No. 41 at 6 (citing *Micro-Managers*, 434 N.W.2d 97); ECF No. 63 at 4–5 (asserting the same). But *Micro-Managers* held no such thing. The court in *Oracular* acknowledged this explicitly: "whether computer software developers are professionals appears not to have been argued or decided in *Micro-Managers*; we assumed without deciding that they were professionals." 767 N.W.2d, ¶ 23. To assume without deciding that something is the case is not synonymous with holding that such is the case. *See Caine v. Burge,* 897 F. Supp. 2d 714, 721 (N.D. Ill. 2012) ("Dicta has been 'variously defined,' one definition being 'any statement made by a court for use in argument, illustration, analogy, or suggestion . . . concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication.'" . . . . Dictum is distinguished from holding insofar as dictum lacks authority and 'is part of an opinion that a later court, even an inferior court, is free to reject.'") (quoting *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) and citing *Clevenger v. Bolingbrook Chevrolet, Inc.*, 401 F. Supp. 2d 878, 883 (N.D. Ill. 2005)); *Wiess v. Wal-Mart Stores, Inc.*, No. 10-111-GPM, 2010 U.S. Dist. LEXIS 47195, at *9 (S.D. Ill. May 13, 2010) ("In general, a judicial decision is only authority for the issues that it *actually decides* . . . .") (emphasis added) (citing *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 936 n.5 (S.D. Ill. 2006)).[5] By either failing to appreciate or simply ignoring the difference, Defendant mischaracterized the state of the law to this Court.

---

[5] Defendant later acknowledges this. "Unfortunately, the issue is addressed only in dicta in . . . *Micro-Managers* . . . ." ECF No. 76 at 5.

Defendant additionally suggests that *Oracular* is not, in fact, on point because the decision was made specifically within the context of determining whether "expert testimony on the standard of care was required" and because "the court of appeals in [*Oracular*] made clear that its holding was limited to the narrow facts of that case—in which the consultant [did] not develop customizable software." ECF No. 41 at 6–7; *Oracular*, 767 N.W.2d, ¶ 16. The former point is immaterial. As to the latter, it is true that the court in *Oracular* wrote that the lower court was wrong to "place its reliance on *Micro-Managers*," in part because the contract at issue in *Oracular* "was not for custom designed software," but rather was for "off-the-shelf" software, which had not been the case in *Micro-Managers*. But the court in *Oracular* did not suggest that this distinction was necessarily dispositive; indeed, it was only one of multiple distinctions that the *Oracular* court pointed to in reversing the lower court. Defendant erroneously suggests in its original submission that this distinction was the sole basis on which the Oracular court distinguished *Micro-Managers*. ECF No. 41 at 7 ("It was on that basis that the court distinguished *Micro-Managers* . . . ."); *Oracular*, 767 N.W.2d, ¶ 22 ("First, the contract . . . was not for custom designed software . . . . *Further*, the contract in *Micro-Managers* did not require that training in the use of the software be provided; in this case, [the defendant] contracted . . . to provide training.") (emphasis added). The *Oracular* court clearly concluded that "computer consultants are not professionals as that term is used in the tort of professional negligence." *Oracular*, 767 N.W.2d, ¶ 25. It did not cabin that conclusion solely to, for example, "computer consultants who install 'off-the-shelf' software."

Defendant's suggestion that software developers who engage in custom design of software, as opposed to those developers who are

contracted to install "off-the-shelf" software, should be deemed professionals subject to professional negligence claims is akin to the argument that the degree of complexity involved in the underlying task should determine whether the individual may be subject to a professional negligence claim. But the court in *Oracular* explicitly rejected the lower court's reasoning that "because computers are complex . . . [the defendant] was a professional." *Id.*, ¶ 26 (quoting *Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 479 F. Supp. 738, 740 n.1 (D.N.J. 1979) ("Simply because an activity is technically complex . . . does not mean that greater potential liability must attach.")). Surely Defendant would not suggest that a physician who administers a routine vaccine should not be subject to a professional negligence claim while a physician who sews up an open wound with fifty stitches should. Indisputably, the latter undertaking is more involved. But no one would suggest that, by virtue of that distinction, the latter physician should be vulnerable to professional negligence liability while the former is not—they are, after all, both physicians.

Defendant also argues that the Court should recognize the claim of professional negligence in this case because Plaintiff "admitted in its pleadings that it owed [Defendant] a professional duty of competence," and Plaintiff should be "conclusively bound to that admission." ECF No. 76 at 3–4. But parties cannot make judicial admissions on questions of law, and a party's admission does not constrain the Court regarding whether a claim exists as a matter of law. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 766 (7th Cir. 2009) ("Whether a duty exists is a question of law.") (citing *Widlowski v. Durkee Foods, Div. of SCM Corp.*, 562 N.E.2d 967 (Ill. 1990)); *Seeger v. AFNI, Inc.*, No. 05-C-714, 2007 U.S. Dist. LEXIS 40304, at *24 (E.D. Wis. June 1, 2007) ("[J]udicial admissions are only applicable to questions

of fact, and not to questions of law.") (citing *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 682 (7th Cir. 2002)).

Defendant also argues that its "counterclaim for [Plaintiff's] negligent design of the [Software] survives whether or not a professional duty of care attaches to the services performed" because "[a]ccompanying every contract is a common law duty to perform with care, skill, reasonable expediency and faithfulness the thing they agreed to be done . . . ." ECF No. 76 at 4–5 (quoting *Brooks v. Hayes*, 395 N.W.2d 167 (Wis. 1986)). The Court will reject this argument. At bottom, it asserts that even if the Court does not recognize a professional negligence claim in this case, Defendant should still be allowed to pursue a regular negligence claim. But that is not the counterclaim that Defendant pleaded, and it is not the counterclaim that the parties and the Court have been intensively analyzing for the last three months. The Court is not interested in allowing Defendant to effectively add a new counterclaim via a supplement to a response to a motion in limine.

Courts have been clear, both under Wisconsin law and that of other states, that software developers are not professionals for purposes of the tort of professional negligence. *E.g.*, *Oracular*, 767 N.W.2d, ¶ 25; *Ferris & Salter, P.C. v. Thompson Reuters Corp.*, 819 F. Supp. 2d 667, 670–71 (E.D. Mich. 2011) ("There is no basis under Michigan law or, for that matter, in the vast majority of those states whose courts have considered the issue, to deem computer consultants and service providers professionals. . . . [T]he Court concludes that—under Minnesota or Michigan law—no professional negligence action will lie against computer engineers and technicians.") (collecting cases)*; Columbus McKinnon Corp., v. China Semiconductor Co.*, 867 F. Supp. 1173, 1182–83 (W.D.N.Y. 1994) ("There is no basis in law for

extending the doctrine of professional malpractice to cover independent computer consultants. To lift the theory of malpractice from its narrow origin of personal, professional services to a lay patient or client and apply it to the law of commercial contracts would obfuscate the necessary boundaries of these two areas of law.") (citing *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 745 (2d Cir. 1979)); *id.* at 1183 ("[P]ublic policy does not warrant the imposition of a duty upon [the computer designer] . . . –an unincorporated consultant engaged in the rather impersonal and relatively unregulated (compared to many other industries) field of computer design . . . . Also, the nature of his [contractual] relationship . . . was arms-length and, while he may have been vested with a certain degree of responsibility, his duties were not affected by any significant public interest. If liability exists, it is purely contractual . . . . [P]ublic policy weighs against allowing tort liability considerations to interfere with the ordering of private contractual relationships in many instances, this being one of them.") (internal citation omitted) (citing *E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986)); *Hosp. Comput. Sys., Inc. v. Staten Island Hosp.*, 788 F. Supp. 1351, 1354 (D.N.J. 1992) (rejecting the defendant's contention that the plaintiff computer consultant, who was contracted "to create . . . a custom computerized . . . software system" is a "'professional[]' in the same sense as doctors, lawyers, accountants, engineers, architects, and others, who are held to a higher standard of care under the law" for purposes of professional negligence); *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 912 (D. Minn. 2014) ("Of the courts to consider the question, the overwhelming majority have determined that a malpractice or professional negligence claim does not lie against computer consultants or programmers.") (citing *Avazpour*

*Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 364 (E.D.N.Y. 2013), *Ferris & Salter*, 889 F. Supp. 2d at 1153, and *Heidtman Steel Prods., Inc. v. Compuware Corp.*, No. 3:97CV7389, 1999 U.S. Dist. LEXIS 21700, at *35–36 (N.D. Ohio Feb. 15, 1999)); *Batchelar v. Interactive Brokers, LLC*, 422 F. Supp. 3d 502, 516 n.4 (D. Conn. 2019) ("What courts have not held, however, is that a claim for professional negligence or 'computer malpractice' exists with respect to the design of computer software.") (citing *Superior Edge, Inc.*, 44 F. Supp. 3d at 912 and NIMMER); *Goddess Approved Prods., LLC v. Wolox & Sirvant, SA,* No. 20-cv-1697-SB, 2022 U.S. Dist. LEXIS 175807, at *14 (D. Del. Sep. 28, 2022) ("{The plaintiff] invites me to craft a new cause of action under Delaware law: professional negligence against software developers . . . . Like the other courts that have considered this question, I decline to do so.") (citing *Superior Edge, Inc.*, 44 F. Supp. 3d at 911–14).

Defendant makes much of fluctuations in Plaintiff's description of his title (computer consultant, software developer, software programmer, etc.), ECF No. 63 at 1, 3, but this is a matter of semantics—distinctions without a difference. Cases involving professions in this range of titles have reached the same conclusion. *See supra* collected cases.

For all these reasons, the Court concludes that Plaintiff is not a professional for purposes of the tort of professional negligence. Accordingly, the Court will grant Plaintiff's second motion in limine and will dismiss with prejudice Defendant's counterclaim for professional negligence.

### 2.3 Plaintiff's Third Motion in Limine: To Bar Defendant from Arguing that the Software Failed to Meet the Requirements of the Agreement

Plaintiff also moves to bar Defendant from arguing that the Software did not meet the requirements of the Agreement. ECF No. 42 at 1. Plaintiff points to Section 10.2 of the Agreement, which provides in pertinent part that the "second payment will be due when the project's development cycle is deemed complete by confirming that one payroll cycle's processing succeeded in getting data submitted to the third-party ACA-Help . . . ." *Id.* at 1–2 (quoting ECF No. 40-1 at 5). Defendant made this payment, and so, Plaintiff contends, Defendant has waived the argument that the Software failed to function as contracted for. *Id.* at 2, 4–5 ("If Defendant had any issues with the functionality of the [S]oftware, it would not and should not have made the second payment . . . ."); ECF No. 67 at 6 ("[Defendant] made the second payment on August 11, 2016.") (citing ECF No. 56 at 7).

Defendant disputes that the Software "[]ever succeeded in delivering a payroll cycle's data to the third-party ACA-compliance evaluators without errors and manual intervention." ECF No. 42 at 2. Defendant made the second payment not because it was satisfied with the condition of the software, Defendant contends, but rather because of "oral discussions with Plaintiff in late July and/or early August 2016." ECF No. 67 at 6. Specifically, Defendant contends that Plaintiff told Defendant that he "had worked many more hours on the project than he had estimated and needed the money to pay living expenses [and that] if he did not receive prompt payment, he would abruptly discontinue his work on the project." *Id.* Accordingly, Defendant asserts, and notwithstanding its alleged dissatisfaction with the Software at that point, Defendant made the second

payment. *Id.* ("[Defendant's] entire business model was structured around use of the . . . [S]oftware and therefore [Defendant] simply could not allow the project to be brought to a halt before it received the promised, fully functional software.").

The Court will deny this motion in limine because it implicates disputes of fact best left to the factfinder—the jury. Ruling on the merits of this motion would inappropriately usurp the province of the jury with respect to drawing reasonable inferences regarding the motivation behind and implication of Defendant's completion of the second payment. *EEOC v. WRS Infrastructure & Env't, Inc.*, No. 9-C-4272, 2012 U.S. Dist. LEXIS 82836, at *3–4 (N.D. Ill. June 13, 2012) ("[G]enuine issues of disputed fact are not appropriately litigated as motions in limine.") (citing *Abbott v. Sandoz*, 743 F. Supp. 2d 762 (N.D. Ill. 2010) and *Hill v. City of Chicago*, No. 06-C-6772, 2011 U.S. Dist. LEXIS 82895, at *11 (N.D. Ill. July 28, 2011)); *United States v. Klein*, 910 F.2d 1533, 1538 (7th Cir. 1990) ("It is the jury's exclusive function to . . . draw reasonable inferences from the evidence presented.") (citing *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989)).

The parties discuss *Servicios Technologicos de Guatemala, S.A. v. WOCCU Services Group, Inc.*, ECF No. 42 at 5, 9, which provides that "Wisconsin's general rule is that a partial or total payment on a contract does not constitute acceptance of the work insofar as latent defects are concerned, but payment with knowledge of a particular defect does constitute a waiver *in the absence of other circumstances militating against waiver.*" No. 13-cv-601-wmc, 2014 U.S. Dist. LEXIS 107092, at *17 (W.D. Wis. Aug. 5, 2014) (emphasis added) (citing *Contract Law in Wisconsin* § 12.70, at 76 (3d ed. 2012)). It is this italicized phrase that Defendant stresses, ECF No. 42 at 5, and the Court agrees that a jury could find that there are

"circumstances militating against waiver" in this case—for example, Plaintiff's alleged threat to cease further work on the Software if he did not promptly receive the second payment. And while Plaintiff's argument is well taken that Defendant's multi-year use of the Software renders its contention that the Software was unsatisfactory tenuous, the Court will defer to the jury with respect to drawing reasonable inferences from Defendant's continued use of the software in addition to its completion of the second payment.

For these reasons, the Court will deny Plaintiff's third motion in limine. Defendant will not be precluded from arguing at trial that the Software did not function as contracted for.

### 2.4 Plaintiff's Fourth Motion in Limine: To Bar Defendant's "Lost Revenue" Damages Theory

Plaintiff finally moves to bar Defendant from proffering at trial its "'lost revenue' damages theory" on the grounds that it is "speculative and not an appropriate measure of damages under Wisconsin law." ECF No. 43 at 1. The Court will grant this motion.

"[D]amages for lost revenue are improper as a matter of law and the only conceivably permitted consequential damages are lost profits." *Magestro v. N. Star Env't Contr.*, 649 N.W.2d 722, ¶ 19 (Wis. Ct. App. 2002); *id.*, ¶ 15 ("To establish lost profits, claimants must produce evidence of the business's revenue as well as its expenses . . . ."). Plaintiff asserts that Defendant has claimed damages of $5,870,339 in lost revenue at one point during this litigation and $5,305,600 in lost revenue at a different point, without any "explanation for the discrepancy," and that "Defendant has not produced a single document in support of, or purporting to explain, [its] damages claim." ECF No. 43 at 2; ECF No. 43-3 at 4. At his deposition,

Defendant's principal officer, Curt Otto ("Otto"), testified that he calculated the originally proffered $5,305,600 figure himself, that it represented "[n]ew revenue," and that he had not, and could not, "estimate the profit" associated with that figure. ECF No. 43 at 2–3 (Q: "Do you know what the expected profit of [Defendant] would have been on that type of revenue?" A: "I have no idea at this point." . . . Q: "Is that an estimation you think you would be able to do?" A: "No.").

Defendant does little to dispute these assertions. *See* ECF No. 58 at 2 ("Defendant . . . does not refute Plaintiff's argument that Defendant's $5 million damages claim for lost revenue is entirely speculative. In response to Plaintiff's motion[,] Defendant offers no basis whatsoever as to how it arrived at this amount."). Defendant responds that "[a]s a result of Plaintiff's breaches, [Defendant] suffered damages in the form of lost profits," but then provides no estimate for the amount of alleged lost profits, instead claiming that "the lost revenue calculation is itself a lost profits calculation." ECF No. 68 at 2, 6–7. Defendant lists thirteen contracts, which it contends support its estimate for lost revenue. *Id.* at 6. But these contracts are not all associated with Defendant, specifically; rather, they are attributable to the Benefits Companies as a whole, of which Defendant is a mere part. *Id.* Otto testified that Defendant, specifically, derives revenue from only "one account." ECF No. 45-1 at 4. In other words, Defendant appears to seek to recover allegedly lost revenue not only suffered by itself, but also by its non-party sister companies under the Benefit Companies umbrella. The parties' briefing fails to address the propriety of this manuever. In the absence of appropriate briefing demonstrating otherwise, the Court is skeptical that Defendant may properly seek to recover damages attributable to a non-party. *See CDW LLC v. NETech Corp.,* 906 F. Supp. 2d

815, 826 (S.D. Ind. 2012) ("[S]ome of the revenue included . . . is attributable to customers of CDW-Government, which is not a party. The court agrees with [the defendant] that the plaintiffs cannot recover for damages suffered by a non-party . . . . '[A] corporation does not have independent standing to sue for injuries done to a sister or subsidiary corporation, despite the fact that their businesses are intertwined and the success of one is dependent on that of the other.'") (internal quotation marks and citation omitted).

In any event, according to Defendant's own initial disclosures, its request for an over five-million-dollar sum represents "costs associated with the counterclaims of breach of contract and the breach of the implied warranties of merchantability and fitness for a particular purpose." ECF No. 43-3 at 4.[6] The Court has herein dismissed with prejudice Defendant's counterclaim for breach of the implied warranties of merchantability and fitness for a particular purpose. It is unclear from Defendant's initial disclosures what proportion of this over five-million-dollar sum is attributable specifically to the alleged breach of implied warranties, but presumably the overall sum would now be subject to reduction.

Moreover, it appears that Defendant did not—until the filing of its supplementary brief on November 28, 2023—offer any substantiation for its over five-million-dollar request. ECF No. 68. Federal Rule 26(a)(1)(A)(iii) requires the parties to disclose "a computation of each category of damages claimed by the disclosing party," along with "documents or other evidentiary material . . . on which each computation is based." Such a computation is "especially necessary when plaintiffs seek complex

---

[6] Defendant's initial disclosures also provides that Defendant "anticipates an additional cost of $64,000 resulting from [Plaintiff's] professional negligence." ECF No. 43-3 at 4.

damages such as lost profits." *Robinson v. Champaign Unit 4 Sch. Dist.*, 412 F. App'x 873, 878 (7th Cir. 2011) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)). This is not to say that a party must prove its damages with "mathematical precision." *Epic Sys. Corp. v. Tata Consultancy Servs.*, 980 F.3d 1117, 1133 (7th Cir. 2020) (quoting *Mgmt. Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 80 (Wis. 1996)). "Nevertheless, the evidence presented must afford a reasonable basis for the computation of damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 632–33 (7th Cir. 2007) (citing *Royal's Reconditioning Corp. v. Royal*, 689 N.E.2d 237, 240 (Ill. App. Ct. 1997)).

"Complying should be a priority—not something brushed off as tedious or unimportant so long as the information disclosed late can somehow be unearthed like a needle in a haystack within a prior discovery production." *Morris v. BNSF Ry. Co.*, 969 F.3d 753, 766 (7th Cir. 2020). "Parties who do not attend diligently to their obligation to supplement initial disclosures proceed at their own peril." *Id*. "If a party does not follow these rules, 'the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or was harmless.'" *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011) (quoting Fed. R. Civ. P. 37(c)(1)). But "[b]anking on principles of harmless error to excuse negligence is risky business." *Morris*, 969 F.3d at 766.

Notwithstanding Defendant's labeling of the section in its initial disclosures as "Computation of Money Damages," and notwithstanding Defendant's later misrepresentation that its "damages calculation was disclosed in its initial Rule 26(a) disclosures," Defendant did not actually provide any computation or calculation for its anticipated damages. ECF

No. 59-2 at 4; ECF No. 68 at 7. A bald, estimated sum is not equivalent to a calculation or computation. *See Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.,* No. 20-cv-01060, 2021 U.S. Dist. LEXIS 196112, at *11 (N.D. Ill. Oct. 12, 2021) ("[T]he mere fact that [Plaintiff] provided an exact estimate of its actual damages—$2,259,507.00—is not sufficient . . . . [Plaintiff] must explain *how* it arrived at this number. 'The word computation contemplates some analysis beyond merely setting forth a lump sum for a claimed element of damages . . . .'") (internal citations omitted) (quoting *Jones v. Wal-Mart Stores, Inc.*, No. 2:15-cv-1454-LDG-GWF, 2016 U.S. Dist. LEXIS 40426, at *10 (D. Nev. Mar. 28, 2016)).

Nor does Defendant appear to have timely supplemented those initial disclosures with any of the requisite substantiation (again, any such substantiation did not occur until the end of November 2023, after the final pretrial conference in this matter, after the originally scheduled trial date, and over a year after the initiation of the case). ECF No. 10. While Defendant was not obligated to provide a precise calculation of its damages early in the discovery process, it was nevertheless obligated to promptly supplement its disclosures, and the Court cannot conclude that Defendant promptly did so in this case. *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp.,* No. 3:11-CV-268 JD, 2017 U.S. Dist. LEXIS 110070, at *9 (N.D. Ind. July 17, 2017) ("[T]hough parties may be unable to provide a precise computation of their damages at the outset of discovery, when their initial disclosures are first due, they must promptly submit their computations as they have the opportunity to develop and refine their theories through discovery.") (citing *Dynegy Mktg. & Trade*, 648 F.3d at 514–15).[7] Even now,

_____

[7]For example, in March 2023, Defendant, in response to interrogatories, declined to "[i]dentify with specificity the 'significant sums' [allegedly] expended

little if anything in the record "shines light into the black box of [Defendant's] damages calculation process." *Dynegy Mktg. & Trade*, 648 F.3d at 514. Further, the Court cannot conclude that Defendant's dilatory conduct was harmless, since "[w]ithout an idea of where . . . [D]efendant['s] numbers were coming from, [Plaintiff] was unable to investigate and raise arguments against the claimed damages . . . ." *Id.* at 514–15.

Defendant faults Plaintiff for not inquiring further into Defendant's theory of damages earlier, writing that "[i]f Plaintiff had further inquiries about the measure of damages, it could have posed an interrogatory asking about it or noticed a Rule 30(b)(6) deposition . . . . Plaintiff did neither." ECF No. 68 at 7–8. But this is incorrect. Plaintiff *did* direct interrogatories to Defendant seeking clarification regarding Defendant's asserted damages, and Defendant declined to respond substantively to them. ECF No. 58-1 at 9–10; *see supra* note 7. In any event, it is Defendant's own obligation to prove its damages appropriately; it is not Plaintiff's responsibility to repeatedly prod Defendant to do so. *Assaf v. Trinity Med. Ctr.*, 821 F.3d 847, 848 (7th Cir. 2016) (the party seeking to recover damages bears the burden of proving that he did, in fact, suffer damages and must establish a reasonable basis for computation of those damages).

For all these reasons, the Court will grant Plaintiff's fourth motion in limine. Defendant may not argue at trial that it is entitled to either of the

---

by [Defendant] 'in testing and attempting to make the software function as promised,'" declined to "[i]dentify with specific amounts the 'money paid to [Plaintiff] to attempt to fix the software, money expended on materials in attempting to get the software to work as represented, and the costs of using internal company resources to resolves [sic] issues with the software,'" and declined to "identify all documents or other evidence that supports" these damages allegations, on the grounds that the requests were "premature . . . and that discovery [wa]s ongoing." ECF No. 58-1 at 9–10 (quoting ECF No. 12 at 9–10).

above-described over five million dollar sums, which represent figures not recoverable as a matter of law, are both speculative and improperly disclosed, and—according to Defendant's own initial disclosures—are at least partially mooted/subject to reduction in light of the Court's dismissal of Defendant's counterclaims for professional negligence and for breach of the implied warranties of merchantability and fitness for a particular purpose.

### 2.5 Defendant's Motion in Limine: To Bar Plaintiff's Quantum Meruit Theory of Recovery

Lastly, Defendant moves to preclude Plaintiff from arguing at trial that he is entitled to an "award in excess of $600,000" based on "the amount of time he spent on the project, multiplied by his hourly rate," which Defendant argues is "the very definition of a quantum meruit claim." ECF No. 52 at 1. Defendant contends that Plaintiff did not disclose this theory of recovery to it until November 8, 2023—the day after the parties convened for a final pretrial conference in this matter. *Id.* Defendant argues that this theory of recovery should be precluded because it was not disclosed in Plaintiff's initial disclosures (which Defendant represents were not appropriately supplemented) and, in any event, is an impermissible measure of recovery in light of the Agreement. *Id.* at 1–2. For the reasons discussed herein, the Court will grant Defendant's motion.

First, and as Defendant notes, the eleventh-hour disclosure of this theory of damages is unjustified because the information needed to arrive at it—namely, Plaintiff's own hours worked and hourly rate—are, and always were, in Plaintiff's own possession. *Id.* at 3. There is no apparent reason why Plaintiff could not have proffered this measure of recovery, and

the information on which it is based, at the very beginning of this case.[8] *See supra* Section 2.4 (discussing parties' obligation to promptly disclose computation of damages sought to be recovered). And just as the Court could not conclude that Defendant's own failure to promptly disclose its computation of damages was harmless, the Court similarly cannot conclude that Plaintiff's own failure to do so was harmless. *Dynegy Mktg. & Trade*, 648 F.3d at 514–15.

Furthermore, the parties in this case are governed by a contract—the enforceability of which is not disputed—which expressly sets forth their responsibilities, including with respect to payment. "Under Wisconsin law, the quasi-contractual theor[y] of quantum meruit . . . [is a] legal cause[] of action grounded in equitable principles and *can be invoked only in the absence of an enforceable contract*." 84 A.L.R.2d 1077, *1 (citing *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119 (E.D. Wis. 2016)) (emphasis added); ECF No. 52 at 7.

---

[8] Plaintiff argues that he disclosed this theory of recovery roughly two months earlier, on September 1, 2023, by way of a footnote in Plaintiff's non-compliant summary judgment filing. ECF No. 52 at 9 (citing ECF No. 35-2 at 6 n.2); *see also* October 11, 2023 text order (denying Plaintiff's motion for leave to file a motion for partial summary judgment "due to the continued presence of material disputes of fact and a continued failure to comply in good faith with the Court's summary judgment protocols"). But that did not constitute a sufficient disclosure. *See Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 882 n.15 (E.D. Wis. 2010) (refusing to consider theory of damages based on reasonable royalty when raised for the first time in a footnote in a summary judgment brief); *Barlow v. GMC*, 595 F. Supp. 2d 929, 935–36 (S.D. Ind. Jan. 20, 2009) ("Rule 26(e) was intended to ensure prompt disclosure of new information, not to allow parties to spring late surprises on their opponents under the guise of a 'supplement' to earlier disclosures.") (collecting cases). This is particularly so considering that Plaintiff's new theory of damages apparently more than quintupled the amount originally sought. *See Ind. GRW, LLC v. Am. Guar. & Liab. Ins. Co.*, No. 3:21-cv-227 DRL, 2023 U.S. Dist. LEXIS 81814, at *16 (N.D. Ind. May 10, 2023) (fact that party "[m]ore than doubl[ed]" its asserted damages in a supplemental disclosure relevant to conclusion that disclosure was neither substantially justified nor harmless).

Plaintiff disputes the characterization of his new damages theory as one of quantum meruit, but the Court is not convinced, at least when it comes to Plaintiff's breach of contract claim. At bottom, this new measure of damages seeks to compensate Plaintiff for the value of the labor and service that he provided to Defendant. By definition, damages pursuant to quantum meruit are "measured by the reasonable value of the plaintiff's services." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (quoting *Ramsey v. Ellis*, 484 N.W.2d 331, 334 (Wis. 1992)). And as already noted, "quantum meruit only appl[ies] where the services performed were not covered by the parties' contract, where the contract is invalid[,] or where the contract is unenforceable"—circumstances not at issue here. *United States ex rel. Roach Concrete, Inc. v. Veteran Pac., JV*, 787 F. Supp. 2d 851, 858 (E.D. Wis. 2011) (citing *Gorton v. Hostak, Henzl & Bichler*, 577 N.W.2d 617, 619 n.3 (Wis. 1998)). It seems to the Court that Plaintiff has contract remorse, and that this new theory of damages is an attempt at avoiding it; he conceded in his deposition that by charging $15,000 for his programming time, he was potentially entering into a disadvantageous deal for himself if the job proved more labor intensive than anticipated, which it did. ECF No. 45-2 at 48 (Q: "And then for $15,000 they get another hundred hours of programming time, right?" A: "And potentially a lot more." Q: ". . . And did it wind up being a lot more?" A: "It did.").

Nevertheless, a plaintiff may recover damages both for breach of contract and separately for copyright infringement if the damages are attributable to "completely separate injuries." *Paramount Pictures Corp. v. Metro Program Network, Inc.*, 962 F.2d 775, 780 (8th Cir. 1992) (citing *Joseph J. Legat Architects, P.C. v. United States Dev. Corp.*, No. 84-C-8803, 1991 U.S. Dist. LEXIS 3358 (N.D. Ill. Mar. 20, 1991) and *Edwin K. Williams & Co. v.*

*Edwin K. Williams, Etc.*, 542 F.2d 1053, 1055 (9th Cir. 1976)); ECF No. 52 at 15. The conduct giving rise to Plaintiff's claim of copyright infringement is Defendant's alleged failure to pay royalties owed notwithstanding its continued use of the Software. ECF No. 11 at 5, 4. Plaintiff alleges that Defendant's alleged failure to pay royalties owed, and to provide necessary information to compute the royalties owed, also goes to his breach of contract claim. *Id.* at 4. In other words, it is not at all clear that Plaintiff seeks to recover for breach of contract and under the Copyright Act for "completely separate injuries." *Paramount Pictures Corp.*, 962 F.2d at 780 (citing *Joseph J. Legat Architects,* 1991 U.S. Dist. LEXIS 3358 and *Edwin K. Williams & Co.*, 542 F.2d at 1055).

For these reasons, the Court will grant Defendant's motion in limine. ECF No. 52. Plaintiff will be precluded from arguing at trial that he is entitled to the value of the labor and service he provided to Defendant in developing the Software, which at present Plaintiff estimates to be somewhere in the realm of $600,000.

**3.    CONCLUSION**

For the reasons discussed herein, the Court will grant Plaintiff's first, second, and fourth motions in limine, grant Defendant's sole motion in limine, and deny Plaintiff's third motion in limine. The Court will also grant Plaintiff's motions to restrict.

Accordingly,

**IT IS ORDERED** that Plaintiff Michael Ver Hagen d/b/a Data Design's first, second, and fourth motions in limine, ECF Nos. 40, 41, and 43, be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant BeneTek, Inc.'s counterclaim for breach of the implied warranties of merchantability and

fitness for a particular purpose, ECF No. 12 at 10–11, be and the same is hereby **DISMISSED with prejudice**;

      **IT IS FURTHER ORDERED** that Defendant BeneTek, Inc.'s counterclaim for professional negligence, ECF No. 12 at 10, be and the same is hereby **DISMISSED with prejudice**;

      **IT IS FURTHER ORDERED** that Plaintiff Michael Ver Hagen d/b/a Data Design's third motion in limine, ECF No. 42, be and the same is hereby **DENIED**;

      **IT IS FURTHER ORDERED** that Defendant BeneTek Inc.'s motion in limine, ECF No. 52, be and the same is hereby **GRANTED**; and

      **IT IS FURTHER ORDERED** that Plaintiff Michael Ver Hagen d/b/a Data Design's motions to restrict, ECF Nos. 60, 66, 83, be and the same are hereby **GRANTED**. The filings subject to said motions shall remain restricted pending further order of the Court.

      Dated at Milwaukee, Wisconsin, this 1st day of February, 2024.

                    BY THE COURT:

                    J. P. Stadtmueller
                    U.S. District Judge